IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Candis Leann Aubrey, | Civil Action No. 2:17-cv-656-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| McCabe Trotter & Beverly, P.C., | |
| Defendant. | |

This matter is before the Court on Defendant McCabe, Trotter & Beverly, P.C.'s motion for summary judgment (Dkt. No. 25) and Plaintiff Candis Leann Aubrey's motion for partial summary judgment (Dkt. No. 28). For the reasons set forth below, the Court denies Defendant's the motion for summary judgment and grants Plaintiff's motion for summary judgment as to liability.

**I.   Background**

Plaintiff Candis Leann Aubrey ("Aubrey") owns a home in the Hunter's Wood subdivision of Crowfield Plantation, a housing development. (Dkt. No. 25 at 5.) The development is subject to the Crowfield Plantation Community Services Association, a homeowners' association ("HOA") that charges annual assessments pursuant to the HOA's covenants and restrictions ("CRs"). (Dkt. No. 25 at 1.) The HOA employs Defendant McCabe, Trotter & Beverly, P.C. ("MTB") to represent it in the collection of assessments. (Dkt. No. 25-1.)

Under the CRs, as owners in Crowfield, Plaintiffs are members of the HOA and are responsible for paying assessments. (Dkt. No. 25 at 6.) The fifth paragraph of Article IX, Section 1, of the CRs, titled "Creation of General and Parcel Assessments," discusses what owners are responsible for paying:

> Assessments, together with Delinquent Payment Fees thereon and costs of collection thereof *including reasonable attorney's fees as hereinafter provided,* shall be a charge on the land and shall be a continuing lien upon the Residential or Commercial Unit or platted lots owned by the Declarant, or other property against which each assessment is made. Each such assessment, together with Delinquent Payment Fees, costs, *and reasonable attorney's fees,* shall also be the personal obligation of the person who was the Owner of such Unit at the time the assessment fell due.

(Dkt. No. 33-1 at 24) (emphasis added).[1] Article IX, Section 6, specifies what occurs if an owner fails to pay an assessment:

> Section 6. <u>Effect on Non-Payment of Assessment; The Lien; Remedies of Association</u>. If the assessments are not paid on the date when due then such assessment shall become delinquent and shall (together with a Delinquent Payment Fee as shall be provided in the By-Laws but not to exceed five (5%) percent of the unpaid balance per month from the due date and each month thereafter and so long as the assessment or any part thereof remains delinquent, and cost of collection thereof as herein provided) become a charge and continuing lien on the land and all improvements thereon...
>
> If the assessment is not paid within sixty (60) days after the due date, the Association may bring an action at law against the property Owner personally obligated to pay the same or to foreclose the lien against the property, and there shall be added to the amount of such assessment the costs of preparing and filing the complaint in such action, *and in the event a judgment is obtained,* such judgment shall include Delinquent Payment Fees on the assessment as above provided *and a reasonable attorney's fee* together with the costs of the action.

(Dkt. No. 33-1 at 27 – 28) (emphasis added).[2] The covenants for the Hunters Woods subdivision provides that a party "enforcing the Covenants" can recover "attorney's fees and expenses *if he prevails.*" (Ex. 28-11 at 10.)

The CRs also state that the Board of Directors of the HOA can impose fines for violations of the CRs. The most recent amendment to the CRs explains that, "Notwithstanding the foregoing,

---

[1] This section of the CRs was most recently amended in 1981 and the most up to date version is quoted here. The language regarding attorneys' fees is the same as in the original CRs. (*See* Dkt. No. 25-5 at 20 – 21.) Article XIII of the CRs provide for an amendment process.

[2] This section of the CRs was most recently amended in 1988. The language regarding costs and attorneys' fees is the same as in the original CRs. (*See* Dkt. No. 25-5 at 23.)

the Board of Directors shall have the power to impose a reasonable fine for violations...." (Dkt. No. 33-1 at 37.) The amended CRs further provide that such fines shall become a continuing lien on the land. (*Id.*) A non-amended portion of the By-laws further discusses the levying of fines, stating in Article II, Section 21 that "[t]he Board shall not impose a fine...for violations of rules unless and until the following procedure is followed," and proceeds to require the Board to send a demand, send a notice, hold a hearing, and provide an avenue for appeal. (Dkt. No. 32-3 at 10 – 11.)

On August 24, 2015, the HOA entered into an Attorney Employment Agreement ("fee agreement") with Defendant. (Dkt. No. 25-1 at 7.) The fee agreement makes clear that it is Defendant's job to pursue the "collection and foreclosure of liens and assessments." (Dkt. No. 25-1 at 1.) The fee agreement provides that actions to pursue unpaid assessments are handled "on a flat fee basis." (*Id.*) Upon instituting an action to recover unpaid assessments, including sending a letter to the owner and eventually filing a notice of lien, the fee agreement identifies two sets of fees. (*Id.* at 8.) First, Defendant charges the HOA a flat fee of $65. (*Id.* at 8.) Second, the fee agreement identifies "fees to Homeowner," which includes the $65 already paid by the HOA and additional amounts depending on the amount of work performed. (*Id.*) The fees range from $425 for sending a letter and filing a notice of lien up to costs of $2,425 if the collection action continues through a post-hearing sale. (*Id.*) Defendant never generates an invoice for the remaining attorneys' fees until it is collected from the homeowner. (*Id.* at 1.)

Starting in April 2013, the HOA began to contact Plaintiff regarding a shed on her property that allegedly was built without approval. (Dkt. No. 25-8.) Plaintiff did not remove the shed, and the HOA imposed a $100 fine, plus a continuing fine of $25 per day as long as the shed remained.

(*Id.*)³ In addition to not paying the fines, Plaintiff additionally ceased paying the annual assessments beginning on January 1, 2014. (Dkt. No. 25-11 at 2; Dkt. No. 28-9 at 3.) As of October 15, 2015, Plaintiff had incurred $13,625.83 in fines, assessments and interest. (Dkt. No. 25-11 at 3; Dkt. No. 28-9 at 5.)

The matter was referred by Crowfield to Defendant in October 2015. (Dkt. No. 25 at 13.) It is undisputed that Defendant then took the following actions:

- On October 26, 2015, Defendant filed a Notice of Lien for $14,005.21 for the unpaid assessments, fines, interest, and "attorney's fees." (Dkt. No. 28-7 at 2, 7; Dkt. No. 25-9.) The notice of lien was mailed to Plaintiff on the same day. (Dkt. No. 28-7.)

- On January 25, 2016, Defendant filed a complaint seeking to foreclose the Notice of Lien. (Dkt. No. 25-13.) In a letter dated January 22, 2016, (though seemingly sent later), Defendant served Plaintiff with the Complaint and stated that Plaintiff's "balance *including attorney's* fees is $16,251.83." (Dkt. No. 25-10 at 1) (emphasis added). The Complaint itself only sought $14,081.83 in principal, late fees, and interest, but stated that Crowfield was entitled to "reasonable attorneys' fees and costs." (*Id.*)

- On February 23, 2016, responding to a request from Plaintiff, Defendant mailed a letter with the subject line "Verification of Debt" that stated it was "For the Purpose of Collecting a Debt." The letter listed $16,366.65 as Plaintiff's "Total Amount Due," which included $1,925 in "Attorney's Fees." (Dkt. No. 25 at 14; Dkt. No. 28-12.)

- On March 4, 2016, Defendant mailed a letter with an attached itemized list of Plaintiff's allegedly outstanding debt. The letter stated it was "For the Purpose of Collecting a Debt." The itemized list identified $16,366.65 as the total amount due, and included $1,925 in "Attorney's Fees.' (Dkt. No. 25-11 at 3.)

While Plaintiff only brings one cause of action under the FDCPA, she alleges multiple violations of the Act. First, Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, by attempting to collect attorneys' fees, since the fees were not authorized under the CRs. Second, Plaintiff additionally alleges that it was a

---

³ Defendant's brief also makes reference to a fence built without approval, and it is reflected in a verification of debt letter sent on March 4, 2016. (Dkt. No. 25-11 at 2.) The letter and other documents also reflect that the HOA began to impose fines in November 2012, though neither party specified what those fines were for. (Dkt. No. 25-11 at 2; Dkt. No. 28-9 at1.)

violation of the FDCPA for Defendant to file any Complaint against Plaintiff, since the statute of limitations on Plaintiff's owed fines expired after three years. Third, Plaintiff alleges that it was a violation of the FDCPA for the Defendant to seek to recover any fines against Plaintiff since the fines were not imposed according to the procedures detailed in the by-laws. Finally, Plaintiff alleges that all communications purporting to be from MTB violated the FDCPA since they were not meaningfully reviewed by an attorney.

## II.  Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III. Discussion

To make out a claim under the FDCPA, Plaintiff must prove that:

(1) Plaintiff has been the object of collection activity arising from consumer debt;

(2) Defendant is a debt collector as defined by the FDCPA, and;

(3) Defendant has engaged in an act or omission prohibited by the FDCPA

*See Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 565 (D.S.C. 2014). In relevant part here, the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," or from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C.A. § 1692(e); §1692(f). Courts must review whether a communication is misleading through the lens of the least sophisticated consumer, which is "an objective standard that evaluates § 1692e claims based upon how the least sophisticated consumer would interpret the allegedly offensive language." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394 – 95 (4th Cir. 2014). Importantly, a plaintiff must prove only one violation of the FDCPA for a debt collector to be liable under the FDCPA. *See Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017) *citing* § 1692k(a).

Defendant does not contest that it sought to collect a debt and that it is a debt collector as defined by the FDCPA. (Dkt. No. 25 at 17.)

#### A. Inclusion of Attorneys' Fees

To legally collect attorneys' fees under the FDCPA, a defendant "ha[s] to specify an amount that it intended to charge (or had already charged) for its services" and a debtor must have "contractually agreed to pay attorneys' fees and collection costs...." *Fields v. Wilber Law Firm,*

*P.C.*, 383 F.3d 562, 565 (7th Cir. 2004). Plaintiff here has shown that there is no dispute that she did not contractually agree to pay attorneys' fees before judgement is obtained.

In Article IX of the CRs, titled "Assessments," the fifth paragraph states that assessments "including reasonable attorneys' fees as hereinafter provided" are a continuing lien on the Unit, and that such assessments, including "reasonable attorneys' fees" are the responsibility of the Owner. (Dkt. No. 33-1 at 24). While this provision makes clear that the Owner may ultimately be responsible for attorneys' fees, it is silent as to when the debtor has contractually agreed to pay the attorneys' fees. The CRs directly address this point in Article IX, Section 6, titled, "Effect on Non-Payment of Assessment; The Lien; Remedies of Association." The first paragraph of the Section does not reference attorneys' fees, and states that "[i]f the assessments are not paid on the date when due" then the assessment, an additional 5% fee and "cost of collection thereof as herein provided" becomes a continuing lien on the land. However, Section 6 goes on to state that "[i]f the assessment is not paid within sixty (60) days after the due date, the Association may bring an action at law against the property Owner…*and in the event a judgment is obtained*, such judgment shall include Delinquent Payment Fees on the assessment as above provided *and a reasonable attorney's fee* together with the costs of the action." (Dkt. No. 33-1 at 27 – 28) (emphasis added). The covenants for the Hunters Woods subdivision further provide that a party "enforcing the Covenants" can recover "attorney's fees and expenses *if he prevails*." (Ex. 28-11 at 10) (emphasis added).

It is well settled that "when there is a conflict between general and specific provisions of a contract, the specific clause controls its meaning." *Seery v. DePuy Orthopaedics, Inc.*, No. 2:14-CV-04262-RMG, 2014 WL 12609706, at *2 (D.S.C. Dec. 31, 2014) *quoting U.S. v. Holbrook*, 368 F.3d 415, 428 (4th Cir. 2004). Here, the general provisions regarding assessments provides

that Owners are, generally, responsible for reasonable attorneys' fees. Nonetheless, it is the specific provisions regarding the "Effect of Non-Payment of Assessment" and the "Remedies of Association" that control how and when the Defendant could collect reasonable attorneys' fees.[4] Under those provisions, Defendant could seek attorneys' fees from Plaintiff only once a judgment has been obtained or a party has prevailed.[5]

Courts recognize that even where a debt collector may ultimately attempt to collect a debt, it is still a violation of the FDCPA to do so before the underlying agreement permits. *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 173 (3d Cir. 2015) (agreement provided for recovery of fees "for services performed" and law firm violated FDCPA where it attempted to collect $2,050 in attorneys' fees and costs two months before the foreclosure action was filed); *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 243 (3d Cir. 2014) (law firm violated FDCPA where it attempted to collect $650 in attorneys' fees before it performed work). Here, there is no doubt that had a judgement been obtained, Defendant would have been authorized under the CRs to recover attorneys' fees and costs, Defendant just could not do so before the CRs allowed.

---

[4] The sentence discussing a continuing lien for assessments states that the lien includes "reasonable attorneys' fees as hereinafter provided." (Dkt. No. 45-2 at 24). In addition to the reasons discussed above, the phrase "as hereinafter provided" further indicates that the reasonable attorneys' fees that are part of the continuing lien are subject to the requirements from later in Article IX, Section 6 requiring a "judgment."

[5] The related case of *Mills K. Allison and Caitlin M. Barca, a.k.a. Caitlin Barca Allison v. McCabe Trotter & Beverly, P.C.*, Case. No. 2:17-cv-1727 (D.S.C. Aug. 10, 2018) includes clear language allowing a debt collector to seek recovery of attorneys' fees and costs prior to a judgment. There, a section in the Covenants with a similar title, "Effect of Non-Payment of Assessments; Remedies of the Association," stated unequivocally that "[t]he Association may bring an action at law against the Owner personally obligated to pay the same or foreclose the lien against the property and such Owner shall be responsible for all costs of collection *including reasonable attorneys' fees* and expenses incurred *whether before or after a suit for collection is brought.*" *Id.* at 1 – 2. (emphasis added). There is no similar language here. Indeed, the only discussion of attorneys' fees in the section regarding the effect of a homeowner failing to pay an assessment makes clear that a judgment is required before seeking attorneys' fees.

Defendant argues that it was required to list the attorneys' fees in order to comply with § 1692(g), which requires a debt collector to provide written notice of the "amount of the debt." However, the CRs here do not allow the HOA to collect the attorneys' fees before a judgment is obtained, and therefore including attorneys' fees did not accurately reflect the "amount of the debt," but rather was an estimate of what Plaintiff's may owe if the HOA ultimately prevailed. *See Annunziato v. Collecto, Inc.*, 207 F. Supp. 3d 249, 263 (E.D.N.Y. 2016) ("Thus, contrary to what the Defendant appears to contend, Section 1692g(a)(1) did not require it to include an estimate of a potential contingency fee due in its debt collection letter.")[6]

Here, it is undisputed that Defendant repeatedly represented that Plaintiff owed attorneys' fees. In particular, Defendant sent four letters between October 26, 2015, and March 4, 2016, reflecting that Plaintiff owed between $425 and $1,925 in attorneys' fees. It is further undisputed that no judgment was obtained prior to Defendant sending those letters. Therefore, Defendant violated § 1692(e) and misrepresented the amount of the debt Plaintiff owed by including attorneys' fees in the debt collection letters.

The Court further finds that the letter dated January 22, 2016, accompanying the Summons and Complaint, violated the FDCPA by failing to explain the debt Plaintiff allegedly owed. Importantly, the letter simply stated that "[a]s of the date of this letter your balance including

---

[6] If Crowfield's CRs are ultimately amended to allow collection of attorneys' fees before judgment, then the FDCPA will permit MTB to do so. Furthermore, a debt collector can represent potential attorney's fees to a debtor where it is unambiguous that the fees are merely an estimate of the amount counsel expects to earn over the course of the proceedings. *See Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015) ("where the debt collector sought no more than applicable law allowed and explained via affidavit that the figure was merely an estimate of an amount counsel expected to earn in the course of the litigation, the representations cannot be considered misleading under 15 U.S.C. § 1692e(2)."). Nonetheless, a debt collector cannot misrepresent the amount of the debt by stating that attorneys' fees are part of the outstanding debt where the underlying agreement only permits recovery once judgment is obtained.

attorney's fees is $16251.83." No further explanation of the amount allegedly owed was included. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565 (7th Cir. 2004), a case relied on extensively by Defendant, held that the defendant law firms' attempt to collect attorneys' fees without a court order did not violate the FDCPA since it was expressly permitted by the contract. Nonetheless, the Court found that the Defendant *did* violate the FDCPA by failing to explain the lump sum included in the collection letter. *Id.* at 566. The Court stated that, "It is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt. One simple way to comply with § 1692e and § 1692f in this regard *would be to itemize the various charges* that comprise the total amount of the debt." *Id.* (emphasis added). Here, Defendant similarly hid the true character of the debt. Plaintiff had no way to assess which parts of the lump sum of $16,251.83 constituted her unpaid fines, assessments, attorneys' fees or costs, and therefore had no way to assess the validity of the debt. Because there is no dispute regarding Defendant sending the January 22, 2016, letter to collect a debt and that the amount in the letter contained unexplained fees, costs, interest, fines and assessments, Defendant violated § 1692(e) and § 1692(f) of the FDCPA and Plaintiff is entitled to summary judgment as to liability.

**B.     Sealed Document**

The Court is mindful that a plaintiff must prove only one violation of the FDCPA for a debt collector to be liable under the FDCPA, and the Plaintiff has done so here. *See Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017) *citing* § 1692k(a). Nonetheless, the Court denies summary judgment on Plaintiff's allegation that Defendant violated the FDCPA by filing a complaint for fines outside of the applicable statute of limitations. Plaintiff claims the three year statute of limitations for contract actions, rather than the twenty year statute of limitations for sealed documents contained in S.C. Code Ann. § 15-3-520, applied to Plaintiff's

outstanding debt. Plaintiff however ignores the fact that the final page of the CRs state unequivocally that the documents are "Signed, *Sealed* and Delivered." (Dkt. No. 25-5 at 37) (emphasis added). While the South Carolina Court of Appeals has clearly held that common language such as the "parties hereto have set their hands and seals" does not create a sealed document, the Court of Appeals recognized that additional language such as "Signed Sealed and Delivered" can manifest an "intent to create a sealed instrument." *See Carolina Marine Handling, Inc. v. Lasch*, 363 S.C. 169, 173, 609 S.E.2d 548, 551 (Ct. App. 2005). *See also Lyons v. Fid. Nat. Title Ins. Co*, 415 S.C. 115, 127, 781 S.E.2d 126, 133 (Ct. App. 2015), *vacated pursuant to settlement* (Aug. 26, 2016) (citing *Carolina Marine* for holding that "signed, sealed, and delivered" is a phrase that can manifest intent to create a sealed document). Therefore, the twenty year statute of limitations was appropriate for the foreclosure Complaint.

**C.     Fines**

Plaintiff is further not entitled to summary judgment on her claim that Defendant's inclusion of fines constituted a violation of the FDCPA since the HOA allegedly failed to follow the proper procedures in the by-laws governing imposing fines. Defendant here raised the defense found in § 1692k of the FDCPA that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C.A. § 1692k. The Fourth Circuit has recognized that a debt collector's "reliance on its client may well be relevant to that inquiry." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 235 (4th Cir. 2007). Defendant has presented record evidence that it relied on Crowfield's representation that the fines were due and owing. (Dkt. No. 25-2 at 104.) Therefore, summary judgment is not warranted to either party on this alleged violation.

### D. Meaningful Review

Finally, Plaintiff alleges that Defendant violated § 1692e(3) of the FDCPA by claiming communications were from MTB when there was no meaningful review by an attorney. Again, Defendant has presented record evidence alleging that an attorney reviewed and authorized the communications (Dkt. No. 25-2 at 81, 83 – 85, 87, 104) and therefore neither party is entitled to summary judgment on this alleged violation.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (Dkt. No. 25) and **GRANTS** Plaintiff's Motion for Summary Judgment (Dkt. No. 28) as to liability.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

August 14, 2018
Charleston, South Carolina